```
              IN THE UNITED STATES DISTRICT COURT

                    FOR THE DISTRICT OF OREGON

                         PORTLAND DIVISION



JOSHUA ROBERT BROWN,                    3:10-CV-00003-BR

          Plaintiff,
                                        OPINION AND ORDER
v.

OREGON DEPARTMENT OF
CORRECTIONS; MAX WILLIAMS, in
his official and individual
capacity; STAN CZERNIAK, in
his official and individual
capacity; MICHAEL GOWER, in
his official and individual
capacity; BARBARA COONEY, in
her official and individual
capacity; JOAN BARTON, in her
official and individual
capacity; GREG JONES, in his
official and individual
capacity; MARK NOOTH, in his
official and individual
capacity; JUDY GILMORE, in
her official and individual
capacity; JACK BLANKENBAKER,
in his official and
individual capacity; HEIDI
MACKENZIE, in her official
and individual capacity; and
THERESA HICKS, in her
official and individual
capacity,

          Defendants.


1 - OPINION AND ORDER
```

**JOSHUA ROBERT BROWN**
# 12607362
Oregon State Penitentiary
2605 State Street
Salem, OR 97310-0505

      Plaintiff, *Pro Se*

**JOHN KROGER**
Attorney General
**KRISTIN A. WINGES-YANEZ**
Assistant Attorney General
State of Oregon Department of Justice
1162 Court Street, N.E.
Salem, OR 97301
(503) 947-4700

      Attorneys for Defendants

**BROWN, Judge.**

    This matter comes before the Court on Defendants' Motion (#36) for Summary Judgment.  For the reasons that follow, the Court **GRANTS** Defendant's Motion and **DISMISSES** this matter **with prejudice**.


BACKGROUND

    Plaintiff Joshua Robert Brown is an inmate at Snake River Correctional Institution (SRCI).  On June 18, 2008, Plaintiff was assigned to the Intensive Management Unit (IMU) at SRCI. Plaintiff was housed in the IMU at SRCI from June 18, 2008, through June 25, 2008.

    On June 25, 2008, Plaintiff was transferred to the IMU at

2 - OPINION AND ORDER

Oregon State Penitentiary (OSP) and was housed there until May 13, 2009.

On May 13, 2009, Plaintiff was transferred back to the IMU at SRCI and was housed there until September 22, 2010.

In August 2010 the Oregon Department of Corrections decided to house all male inmates on IMU status at SRCI.  Thus, OSP no longer has an IMU.

On September 22, 2010, Plaintiff was transferred from IMU status at SRCI into the general population at OSP.

On January 4, 2010, Plaintiff filed an action in this Court pursuant to 42 U.S.C. § 1983 in which he alleges Defendant Mark Nooth violated Plaintiff's rights under the First Amendment when he failed to provide Plaintiff with telephone access while Plaintiff was housed in the IMU at SRCI and all Defendants violated Plaintiff's rights under the Due Process Clause of the United States Constitution when Defendants housed Plaintiff in the IMU without periodic review of his status.

On October 14, 2010, Plaintiff filed an Amended Complaint in which he withdrew his request for punitive damages against Defendant Mark Nooth; reduced his request for punitive damages against Defendants Max Williams, Stan Czerniak, Michael Gower, and Barbara Cooney; and added a request for compensatory damages against Defendants Nooth, Williams, Czerniak, Gower, and Cooney.

On November 23, 2010, Defendants filed a Motion for Summary

3 - OPINION AND ORDER

Judgment. After various extensions of time, the Court took Defendants' Motion for Summary Judgment under advisement on May 24, 2011.

## STANDARDS

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id.* "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir.

4 - OPINION AND ORDER

1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

## DISCUSSION

**I.    Section 1983**

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the

5 - OPINION AND ORDER

>           party injured in an action at law, suit in equity,
>           or other proper proceeding for redress.

"In order to survive a motion for summary judgment on a § 1983 claim, the plaintiff must establish a genuine issue of material fact that the defendant (1) acted under the color of state law, and (2) deprived him of a constitutional right." *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009) (citing *Levine v. City of Alameda*, 525 F.3d 903, 905 (9th Cir. 2008)).  State officials or municipalities are liable for deprivations of life, liberty, or property that rise to the level of a "constitutional tort" under the Due Process Clause of the Fourteenth Amendment.  *Johnson v. City of Seattle*, 474 F.3d 634, 638 (9th Cir. 2007).

## II.  Plaintiff has not established Defendant Nooth violated Plaintiff's rights under the First Amendment to the United States Constitution.

As noted, Plaintiff alleges Defendant Nooth violated Plaintiff's rights under the First Amendment to the United States Constitution when Nooth failed to provide Plaintiff with access to a telephone when Plaintiff was in the IMU at SRCI.

Plaintiff concedes the Oregon Department of Corrections (ODOC) provides indigent prisoners with five postage-paid envelopes per month to correspond with attorney, family, and friends.  According to Plaintiff, however, he primarily relied "on long distance communication in order to maintain any semblance of a relationship with [family members]" during his

6 - OPINION AND ORDER

time in the IMU at SRCI because his family members reside outside of Oregon and are unable to visit him. Am. Compl. at 8. As a result of his lack of telephone privileges, Plaintiff contends he was "often forced to choose between communicating with either his attorneys or his friends and family," and, therefore, Plaintiff's familial relationships . . . deteriorat[ed]." Am. Compl. at 8. Thus, Plaintiff alleges it was "clearly unreasonable" to deny him telephone privileges while he was in the IMU at SRCI and, in effect, to make him unable to "adequately communicate with attorneys, family and friends." Am. Compl. at 8.

In *Valdez v. Rosenbaum* the Ninth Circuit held an inmate does not have a *per se* right under the First Amendment to the use of a telephone. 302 F.3d 1039, 1047-48 (9th Cir. 2002). The Ninth Circuit "define[d] the First Amendment right at issue . . . as the right to communicate with persons outside prison walls. Use of a telephone provides a means of exercising this right." *Id*. at 1048. Ultimately, the Ninth Circuit concluded the inmate had not established he was denied his rights under the First Amendment because the inmate "had alternative means of exercising his right to communicate with persons outside the prison walls" including sending and receiving mail and receiving visitors. *Id*. at 1049.

In *Barrett v. Hill* the plaintiff, an inmate at SRCI, brought an action pursuant to § 1983 in which he alleged the

7 - OPINION AND ORDER

defendants violated his rights under the First Amendment when they denied him access to the telephone while he was in the IMU at SRCI. The court denied plaintiff's motion for a preliminary injunction because the plaintiff failed "to demonstrate the irreducible minimum that he has a fair chance of success on the merits." No. Civ. 05-1109-CO, 2006 WL 698185, at *2 (D. Or. Mar. 13, 2006), *aff'd by Barrett v. Hill*, 202 F. App'x 217 (9th Cir. 2006)(citations omitted). The court noted the record reflected the defendants had only restricted the plaintiff from making "non-emergency calls" and "inmates housed in IMU may make telephone calls for legal matters and for emergencies." *Id.* In addition, the plaintiff was given "a reasonable allowance of free postage for correspondence, and [was] also allowed visits from family members while housed in IMU." *Id*. Accordingly, the court concluded the plaintiff's "ability to communicate with the outside world [was] not unconstitutionally restricted." *Id*. (quotation omitted).

Here, as in *Barrett*, the record reflects inmates in the IMU at SRCI are provided telephone calls for emergency and legal reasons or if authorized by the functional unit manager. In addition, inmates are allowed five postage-paid envelopes per month. Finally, inmates in the IMU at SRCI are allowed visits from family members.

The Court concludes on this record that Plaintiff's

8 - OPINION AND ORDER

ability to communicate with the outside world was not unconstitutionally restricted when he was in the IMU.  Plaintiff, therefore, has not established Defendant Nooth violated Plaintiff's rights under the First Amendment when he denied Plaintiff nonemergency telephone access while he was in the IMU at SRCI.  Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's First Amendment claim.

**III.    Plaintiff has not established Defendants violated his right to substantive due process under the Fourteenth Amendment to the United States Constitution.**

Plaintiff contends Defendants violated his right to substantive due process under the Fourteenth Amendment because they "denied [Plaintiff] meaningful . . . periodic classification reviews to determine if he continued to present a threat sufficient to require continued Level 5 custody/IMU confinement."

For an inmate's segregation to constitute the deprivation of a liberty interest in violation of the inmate's substantive due-process rights, the inmate must establish such segregation "present[s] the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Sandin v. Conner*, 515 U.S. 472, 486 (1995).

Defendants contend Plaintiff received periodic reviews, and, even if he had been denied reviews, courts have held conditions in the IMU are not atypical, and, therefore, do not violate inmates' due-process rights.

9 - OPINION AND ORDER

**A.      Defendants conducted regular reviews of Plaintiff's classification during his time in the IMU.**

Defendants assert Plaintiff has not established Defendants violated Plaintiff's due-process rights by failing to conduct periodic reviews of Plaintiff's classification as required by ODOC policy.

ODOC regulations require the Inmate Program Committee (IPC) to conduct a review of "each inmate assigned to IMU status at least every 30 days. Adjustment to IMU and programming levels will be considered." Decl. of Robert Real, Ex. 2 at 5. There are five program levels in the IMU. As noted, the IPC is required to review each IMU inmate at least every thirty days to determine whether the inmate may advance to a higher program level. ODOC regulations require the IPC to consider the following criteria in its evaluation of inmate advancement:

> (A)    Level One:  One month at level one with no major rule Violation arid no more than one minor rule violation may earn promotion to:
>
> (B)    Level Two:  Two months at level two with no major rule violation and no more than one minor rule violation and active participation in prescribed programming may earn promotion to:
>
> (C)    Level Three:  Three months at level three with no major rule violation and no more than one minor rule violation and a successful completion of prescribed programs may earn promotion to:
>
> (D)    Level Four:  Maintain level four

10 - OPINION AND ORDER

>>with no major rule Violation and no more than one minor rule violation.

Real Decl., Ex. 2 at 5. ODOC regulations also require the IPC to complete a "written recommendation to either retain or transfer an inmate out of IMU . . . within 30 days of the inmate attaining a program level four status." Real Decl., Ex. 2 at 6.

The record reflects the IPC conducted reviews of Plaintiff's classification at least once per month in accordance with ODOC policy while he was in the IMU at both SRCI and OSP. *See* Real Decl., Ex. 4. Plaintiff was promoted to level four on August 31, 2010. On September 21, 2010, within 30 days of Plaintiff's promotion to level four, the IPC reviewed Plaintiff and recommended returning him to the general population at OSP. On September 22, 2010, Plaintiff was moved from the IMU at SRCI to the general population at OSP.

The Court, therefore, concludes on this record that Plaintiff has not established Defendants failed to conduct periodic classification reviews of Plaintiff in violation of his right to due process.

> **B.    Conditions in the IMU do not violate Plaintiff's due-process rights.**

Even if Defendants had failed to review Plaintiff periodically, Defendants assert Plaintiff has not established Defendants violated Plaintiff's right to due process because, as noted, courts have held conditions in the IMU are not atypical,

11 - OPINION AND ORDER

and, therefore, they do not violate inmates' due-process rights.

Claims alleging violations of substantive due process generally challenge allegedly "arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Hess v. Bd. of Parole and Post-Prison Supervision*, 514 F.3d 909, 913 (9th Cir. 2008)(quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). *See also Arguijo* v. *Dennis,* No. 07-CV-1908-BR*,* 2009 WL 393957, at *3 (D. Or. Feb. 2, 2009) (same). Changes in prison conditions that are so severe "as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause." *Chhoun v. Woodford,* No. C 03 3219 SI, 2005 WL 1910930, at *5 (N.D. Cal. Aug. 10, 2005)(citing *Sandin*, 515 U.S. at 484).

"Ordinarily, disciplinary classification transfers to other, more restrictive facilities or to other housing within a prison, do not raise liberty interests directly under the Due Process Clause of the Fourteenth Amendment." *Rincker v. Or. Dep't of Corrections*, Civil No. 04-6410-AS, 2007 WL 1723510, at *8 (D. Or. June 12, 2007), *aff'd by Rincker v. Or. Dept. of Corrections*, 301 F. App'x 720 (9th Cir. 2008)(citing *Sandin*, 515 U.S. at 486, and *Meachum v. Fan*o, 427 U.S. 215, 224-25 (1976)). Accordingly, assignment to administrative segregation without other factors present does not implicate a protected liberty interest. *Serrano v. Francis*, 345 F.3d 1071,

12 - OPINION AND ORDER

1078 (9th Cir. 2003).

As noted, for an inmate's segregation to constitute deprivation of a liberty interest in violation of the inmate's substantive due-process rights, the inmate must establish such segregation "present[s] the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Sandin,* 515 U.S. 472, 486 (1995). The court considers three factors to determine whether a condition is atypical and significant:

> (1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody," and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Serrano*, 345 F.3d at 1078 (quoting *Sandin*, 515 U.S. at 486-87).

This court repeatedly has held conditions of the IMUs at both OSP and SRCI are not atypical or significant and, therefore, do not constitute a violation of due process. *See, e.g., Singh v. Czerniak*, No. CV 07-1906-PK, 2009 WL 464461, at *5 (D. Or. Feb. 23, 2009)("[T]he conditions of [the plaintiff's] confinement in the IMU are similar to conditions in the Disciplinary Segregation Unit and the Administrative Segregation Unit. . . . Thus, the conditions in the IMU are not atypical, and do not implicate due process concerns."); *Rincker*, 2007 WL 1723510, at *8 ("the conditions of Plaintiff's confinement in the

13 - OPINION AND ORDER

IMU are remarkably similar to conditions in the Disciplinary Segregation Unit and the Administrative Segregation Unit.  The conditions in the IMU are not atypical, and do not alone give rise to the level of 'atypical confinement or significant hardship' sufficient to implicate due process concerns."); *Johnson v. Kulongoski*, No. Civ. 03-377-CO, 2004 WL 1737732, at *7 (D. Or. Aug. 3, 2004), *aff'd by Johnson v. Kulongoski*, 141 F. App'x 645 (9th Cir. 2005)("the conditions of IMU are substantially similar to those of the Disciplinary Segregation Unit and General Population housing and do not violate the due process clause.").

Here, as in *Singh, Rincker,* and *Johnson*, Plaintiff has failed to establish that conditions of confinement in the IMU at either SRCI or OSP are atypical.  In fact, the record reflects conditions in the IMU are similar to conditions in the Disciplinary Segregation and Administrative Segregation Units at OSP and SRCI.

In addition, Plaintiff does not point to any evidence in the record that his placement in the IMU "invariably affect[ed]" the duration of his sentence.

In summary, the Court concludes on this record that Defendants did not violate Plaintiff's due-process rights with respect to his confinement in the IMU at SRCI or OSP.  Accordingly, the Court grants Defendants' Motion for Summary

14 - OPINION AND ORDER

Judgment as to Plaintiff's due-process claim.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion (#36) for Summary Judgment and **DISMISSES** this matter **with prejudice.**

IT IS SO ORDERED.

DATED this 14th day of July, 2011.

/s/ Anna J. Brown

ANNA J. BROWN
United States District Judge